# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1327V**

|  |  |
|---|---|
| MARY PATRICIA TURNER, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: March 19, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices, Washington, DC, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

## <u>RULING ON ENTITLEMENT</u>[1]

On May 6, 2021, Mary Patricia Turner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on September 17, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Because the parties could not informally resolve the issue of entitlement, Petitioner filed a Motion for Ruling on the Record. For the reasons set forth below, I find that Petitioner is entitled to compensation.

## I.    Procedural History

On July 21, 2023, Respondent filed a Rule 4(c) Report recommending that Petitioner's claim be denied, arguing that Petitioner could not prove by preponderant evidence that her shoulder pain began within 48 hours of her flu vaccination, nor could she prove that she received the flu vaccine in her left deltoid (as the vaccination record stated that the vaccine was administered in the *right* deltoid). *Id*. at 6. On August 3, 2024, I issued a preliminary ruling stating that I was likely to find in favor of Petitioner on entitlement as the record stood, but encouraged the parties to informally resolve the case. ECF No. 24.

The parties attempted over the next year to settle the matter but were unsuccessful. On March 6, 2025, I issued a scheduling order instructing Petitioner to brief entitlement. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on April 21, 2025. ECF No. 42. Respondent filed a Response on June 5, 2025 "(Resp.")". Petitioner filed a Reply on June 20, 2025 ("Reply"). This matter is now ripe for adjudication.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the medical records, the Petition, declarations and affidavits, and in the parties' respective briefings. In summary, Ms. Turner was 65 years old when she received the flu and shingles vaccines at a Walgreens Healthcare Clinic on September 17, 2018.[3] Exhibit ("Ex.") 1 at 1-3; Ex. 5 at 64-65. The vaccination record is marked with the handwritten notation "RA," presumably referring to the "right arm," although Ms. Turner states that she received both vaccines in her left deltoid. Ex. 7 at 1. Ms. Turner had no history of right or left shoulder dysfunction prior to vaccination. *See* Ex. 4; Ex. 5 at 1-61.

Ms. Turner has stated that when she received the flu vaccine, "I started to have pain in the left upper arm almost immediately. Within the first two days, I was in much pain in the area where the vaccines were administered." Ex. 7 at 1. In her supplemental affidavit, Petitioner explains that she "tried dealing with the pain on my own, but the pain never went away. Approximately two weeks later, I called my doctor with complaints of pain in my left shoulder that resulted from the vaccine." Ex. 8 at 1.

---

[3] The vaccination record states that Ms. Turner received the Shingrix (shingles) vaccine in her right deltoid at this visit.  Ex. 1 at 3.

On October 4, 2018 (now 17 days after vaccination), Ms. Turner called the OSF Center for Health and left a message, stating:

> Steve and I had our flu shot and first Shingrix shot on Monday, September 17th at Walgreens. I am still having pain in my left shoulder/arm and I am wondering if this is common. *Both shots were in the left upper arm*. During the day, the pain is tolerable but the pain is waking me up most nights. We leave for Italy on Monday, October 15th so I hope this clears up by then. I have tried Aleve or ibuprofen for a few days with not much relief…

Ex. 5 at 64 (emphasis added). Later that same day, Ms. Turner's call was returned by Jessica Diane Blair, PAC, who recommended that Ms. Turner "elevate arm, alternate warm and cold compresses and take Aleve one tab in the morning and one at night for the next 3 days," and that, "if not improving by next Monday, recommend that she make an appointment to be seen prior to leaving for Italy." *Id*. at 63.

Five days later, on October 9, 2018, Ms. Turner again called OSF Center for Health, complaining that the vaccine sensitivity in her arm that was "persistent." Ex. 5 at 63. Petitioner stated that her shoulder was not "as painful as it was initially, but is still painful." *Id*. at 63. Ms. Turner also stated that "she takes Aleve am and pm and tylenol during the day with no noted change. Is able to sleep thru the night now, and not waking up like she was previously with arm pain." *Id*. at 63.

The next day, on October 10, 2018, Ms. Turner went in person to OSF Center for Health, where she was seen by Kristen Chambers-Damm, M.D. for complaints of "left arm pain." Ex. 6 at 3. Petitioner reported she had been experiencing pain in the left deltoid since receiving the flu and shingles vaccines three weeks prior. *Id*. at 1. At that time, Dr. Chambers-Damm noted that Petitioner "[h]ad both vaccines in the same left arm. Describes it as a soreness across the deltoid. First couple of days after the is [sic] vaccine had significant soreness and pain in that left deltoid." Ex. 6 at 3; Ex. 5 at 65. Dr. Chambers-Damm concluded, "likely muscle bruise from 2 vaccines same muscle and then limited movement of that arm initially secondary to pain. Trial exercises in addition to ice, heat, tylenol, ibuprofen." *Id*. at 67. On exam, Ms. Turner had full range of motion ("ROM") but only 90 degrees of abduction in the left arm. Ex. 6 at 2-3. Dr. Chambers-Damm's assessment was that Ms. Turner suffering from a muscle bruise from two vaccines into the same muscle, and she recommended ice, heat, over-the counter medication, and a trial of exercises. *Id*. at 3.

Almost two months later, on December 5, 2018, Ms. Turner went to OSF Rehabilitation Sheridan for an initial consultation with Sean McGinn, OT. Ex. 2 at 13. Ms. Turner reported that she continued to experience left shoulder pain after receiving a flu

vaccine in the upper arm. *Id*. OT McGinn reported, "Incident Onset Reported: 09/17/18," and that "[t]he patient's affected side is: left," and "[t]he patient believes the problem was caused by 'getting a flu injection in the upper arm.'" *Id*. On exam, Ms. Turner displayed a reduced range of motion of the left deltoid. *Id*. at 14. OT McGinn's assessment was "[a]cute pain in left shoulder." *Id*. at 14.

Between December 5-27, 2018, Ms. Turner attended a total of four occupational therapy (OT) sessions. *Id*. at 27. On January 3, 2019, an x-ray of Petitioner's left shoulder evidenced mild left acromioclavicular degenerative joint disease. Ex. 6 at 74.

On January 16, 2018, Ms. Turner went to Midwest Orthopedic Center and was seen by Michael S. Merkley, M.D. for complaints of left shoulder pain following flu vaccine administration on September 17, 2018. Ex. 3 at 113. Dr. Merkley noted, "[s]he got a flu vaccine as well as a shingles vaccine through a Walgreen's clinic and shortly thereafter began to develop left shoulder pain. She has no history of previous left shoulder problems." *Id*. On exam, Ms. Turner displayed limited range of motion of the left shoulder and positive Neer and Hawkins impingement signs. *Id*. Dr. Merkley assessed Petitioner with "[s]ubacromial bursitis, left shoulder," and "SIRVA, left shoulder." *Id*. Dr. Merkley added, "[c]ertainly, this could be a shoulder injury related to vaccine administration given the timing and relation to her injections." *Id*. Ms. Turner received a corticosteroid injection into the subdeltoid bursa of her left shoulder at this visit. *Id*. at 113-114.

On March 18, 2019, Ms. Turner returned to Midwest Orthopedic Center for a follow-up visit where she was seen by Brandon R. Gale, PA-C. Ex. 3 at 111. Petitioner reported that she had experienced good relief after her prior injection, but that the injection had worn off. *Id*.  Ms. Turner complained of continued bursal pain and requested another injection. *Id*. On examination, Petitioner continued to demonstrate a limited range of motion and a second intramuscular steroid injection was administered into the left deltoid. *Id*. Ms. Turner was also given TheraBand and home exercises. *Id*.

On May 17, 2019, Ms. Turner returned to Midwest Orthopedic Center, where she was once again seen by Dr. Merkley. Ex. 3 at 107. Petitioner reported that she continued to have left shoulder pain despite the steroid injections. *Id*. Dr. Merkley diagnosed Petitioner with recalcitrant subacromial bursitis, and an MRI of the left shoulder was ordered. *Id*.

On May 28, 2019, Ms. Turner underwent an MRI of her left shoulder which showed "1. Interstitial laminar fraying infraspinatus with tendinitis and peritendinitis. No microtear. 2. Mild adhesive capsulitis. 3. Subtle anterior labral tear extending inferiorly measuring 1 cm. No paralabral cyst formation." Ex. 3 at 103.

On July 8, 2019, Ms. Turner returned to Dr. Merkley for a follow-up visit. Ex. 3 at 101. Dr. Merkley reviewed the MRI results and noted, "[i]t shows intact cuff, but there is peritendinitis and bursitis, especially at the posterior superior cuff. She continues to have positive Neer and Hawkins impingement signs." *Id*. Dr. Merkley assessed "recalcitrant left shoulder pain" and "SIRVA, left shoulder." *Id*. Because conservative methods of treatment failed, Ms. Turner "elected to undergo arthroscopy with bursal debridement, possible decompression." *Id*.

On August 1, 2019, Ms. Turner underwent "arthroscopy with subacromial decompression and bursectomy, left shoulder." Ex. 3 at 84. Both the preoperative and the postoperative diagnoses were: "1. Recalcitrant left shoulder pain. 2. Shoulder injury related to vaccine administration, left shoulder." *Id*. Dr. Merkley's surgical indications noted that Petitioner "has recalcitrant left shoulder pain. This started after receiving a flu vaccine at the left shoulder." Ex. 4 at 159.

On August 14, 2019, Ms. Turne returned to Dr. Merkley at Midwest Orthopaedic Center for her first postoperative check of her left shoulder. Ex. 3 at 82. Dr. Merkley noted that "[t]he left upper extremity shows the incisions are healing well." *Id*. Petitioner subsequently attended 20 additional sessions of OT, which concluded on January 15, 2020, when she was discharged after meeting her goals. Ex. 3 at 33.

On September 5, 2019, Ms. Turner went to OSF Medical Group – Urgent Care where she was seen by Stephanie L. McWhirter, APN, CNP, for "a rash to the posterior aspect of the left arm." Ex. 9 at 1. At the time of the visit, NP McWhirter noted that Petitioner "had recent surgery to the left shoulder, she had her influenza and shingles vaccination to that arm and the placement was into the bursa causing the need to have the bursa removed. That surgery was Aug. 1st this year." *Id*. She was prescribed a steroid cream and instructed to follow up with her PCP. *Id*. at 4.

On November 4, 2019, Ms. Turner returned to Dr. Merkley at Midwest Orthopaedic Center for a post-operative follow-up examination. Ex. 3 at 52. Upon physical examination, Dr. Merkley noted negative impingement signs of the left deltoid and no painful arc. *Id*. He noted an impression of "[l]eft shoulder pain," and "[s]houlder injury related to vaccine administration, left shoulder." *Id*. However Dr. Merkley did "not expect any long-term residua." *Id*.

On January 15, 2020, Ms. Turner to Dr. Merkley for a follow-up visit. Ex. 3 at 35. Petitioner noted that she was doing well and had no pain. *Id*. Dr. Merkley also noted that Petitioner's "only complaint is that she cannot sleep on her left side." *Id*. She was instructed to follow up as needed. *Id*.

On September 23, 2020, Ms. Turne returned to OSF Center for Health where she was seen by Dr. Chambers-Damm for a yearly physical examination. Ex. 5 at 128; Ex. 6 at 53. Dr. Chambers-Damm noted, "[s]urgery last august. For left shoulder. Overall improved by certain ways she moves it bothers her." *Id*. Dr. Chambers-Damm further noted, "[l]eft shoulder doing okay, some aches once in awhile." *Id*.

In her sworn declaration, Ms. Turner states that she still has persistent pain in her left shoulder area. Ex. 7 at 1. She states that she now needs assistance lifting heavy items or reaching for high areas in her kitchen. *Id*. at 2. Ms. Turner states that she still cannot sleep on her left side and needs to keep a small pillow near her at all times to sleep or to support her left arm while she is driving. *Id*. Ms. Turner also states that because of her left shoulder, she can no longer babysit her grandchild alone, as she cannot lift them from the crib or in an out of a car seat. She states that the pain and weakness in her left shoulder has put a great burden on her family. *Id*.

## III.    Legal Standards

For compensation to be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or

establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

42 C.F.R. § 100.3(c)(10).

### IV.     Ruling on Entitlement

#### a.  SIRVA Objections – Situs and Onset

While Respondent's opposition is unorganized and cursory, Respondent appears to lodge two objections to entitlement. First, he objects to situs, arguing that Ms. Turner received the flu vaccine to her right shoulder and not her left as she asserts. Second, he contends that there is not preponderant evidence to show that Petitioner experienced shoulder pain within 48 hours of vaccine administration. Opp. at 3-4; Respondent's Rule 4(c) Report at 6 (ECF 23). Neither objection has sufficient evidentiary support to undermine Petitioner's otherwise-preponderant showing.

Regarding situs, although the site of vaccination specified on the vaccine administration record states that Petitioner received both vaccinations in her right deltoid (Ex. 1 at 3), Petitioner herself reported *left shoulder pain* a mere 17 days after vaccination, specifically identifying her left upper arm as the vaccination situs. Ex. 5 at 64. In every record thereafter, Petitioner consistently reported left shoulder pain associated with the vaccinations. She also received all treatment to her left shoulder, and all Petitioner's medical providers evaluated and diagnosed left shoulder symptoms. There is no other record (other than the record of vaccination) to the contrary. *See* e.g., Ex. 2 at 13-14, 27; Ex. 3 at 33-80 (physical therapy records), 85 (records of arthroscopic surgery), 103 (MRI Report), 107, 111-14 (orthopedic records); Ex. 6 at 1-3, 74 (Xray). Thus, I find that Petitioner received the flu vaccine in her left shoulder, as alleged.

Next is the question of whether the record preponderantly establishes 48-hour, post-vaccination onset. Respondent's Rule 4(c) Report states his position:

> Petitioner had no documented visits to a medical provider within the 48-hour post-vaccination period. Rather, the record documents that petitioner first presented to OSF Center for Health on October 4, 2018, seventeen days after vaccination, and did not specify when her pain began.

*Id*. This argument is wholly unpersuasive. Petitioner reported her left shoulder pain less than three weeks after vaccination, complaining that she was "still" having shoulder pain after receiving the vaccines on September 17, 2018. Ex. 5 at 64. When she was examined on October 10, 2019, Petitioner reported that she had "significant soreness and pain in that left deltoid." Ex. 6 at 2. This is the most contemporaneous record where Petitioner specifically reported that she experienced shoulder pain in the 48-hours post vaccination.

In addition, there are multiple citations throughout the record where Petitioner stated that her symptoms began contemporaneously with her vaccine administration. *See* e.g., Ex. 5 at 65 (noting that Petitioner had "both vaccines in the same left arm. Describes it as a soreness across the deltoid. First couple of days after the is [sic] vaccine had significant soreness and pain in that left deltoid"); Ex. 2 at 13 (noting that the incident onset was "09/17/18"); Ex. 3 at 113 (noting that Petitioner "got a flu vaccine as well as a shingles vaccine through a Walgreen's clinic and shortly thereafter began to develop left shoulder pain.") Thus, I find in Petitioner's favor on the issue of onset.

### b.  Other Requirements

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Thus, based upon all of the above, Petitioner has met the elements for a SIRVA and is entitled to compensation.

### Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my ruling, **I find that Petitioner is entitled to compensation. A separate damages order will be issued.**

    **IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master